ALFRED WARFIELD *vs.* SAMUEL AND BASIL BANKS—*December* 1839.

When the answer of one defendant in Chancery refers to and adopts the answer of another defendant, the court will look at both, in determining whether a full answer has been made to all the allegations of the bill.

Where one of several joint purchasers of land, pays more than his due proportion of the purchase money, and the land is afterwards sold for the purpose of distribution, the party making the excessive payment is entitled to be repaid, and the net balance only is to be distributed among the joint purchasers.

If in such a case, a bill is filed for a partition or sale, by one of the parties who has paid no more than his share, the party paying more than his proportion, will be entitled to re-imbursement out of the proceeds of the sale, without shewing that his legal remedies have been exhausted.

APPEAL from Chancery.

On the 17th September 1833, *Alfred Warfield* filed his bill in Chancery, alleging, that a certain *Samuel Banks* and the complainant, were seized in fee as tenants in common, of a tract of land called *"Bunker's Hill Fortified;"* that complainant is desirous of holding his part of said tract in severalty, and has applied to the said *Samuel Banks* to make a friendly partition thereof between themselves—that this has been refused by said *Banks*, who pretends that said land is incapable of partition, according to the rights of the parties; that such pretence is unfounded; and that if the land is incapable of division, it will be to the advantage of both parties, that it should be sold, and the proceeds divided. Prayer for partition or other relief, &c.

*Samuel Banks* appeared and answered, that about 6th March 1804, he and his brothers, *Basil* and *Allen Banks,* all of whom were then working together as partners in trade, purchased of the late *Jeremiah T. Chase,* a tract of land called *"Bunker's Hill Fortified,"* containing about 712 acres, for $4000. That they continued to work together as partners until the year 1812, and jointly to make payments on account of their said purchase out of the joint funds, and by the sale of parts of said land; that at October term 1829, a judgment was rendered against the said *Allen* and this defendant for the balance of the purchase money— the said land was taken in execution; sold for payment of said judgment, and purchased by this defendant at sheriff's sale; that the whole of the purchase money of said land is now fully paid, and has been paid out of the joint funds of this defendant, and the said *Basil and Allen,* except, that on or about the 7th day of September 1818, this defendant paid out of his proper funds $210, in part payment of the said purchase money, and has since fully paid the amount of the said judgment out of his own proper money, as will appear by the exhibits filed with said answer—that his advances have not been repaid him, that no conveyance has been executed by the said *J. T. Chase* for said land, and defendant insists upon a lien to the amount of his payments out of his own funds as aforesaid. That complainant had notice of the facts hereinbefore stated at the time of his purchase at the sheriff's sale; and he bought the interest of the said *Allen* in said land, subject to the liens and preferences before stated. Defendant is willing, that the whole residue of the land be sold, and consents to the same, provided he receives from the proceeds of sale, the sums of money advanced by him, and his just portion of the proceeds of sale; denies that he refused to divide or sell the land, &c.

The bond of conveyance from *J. T. Chase,* to *Samuel* and *Allen Banks,* of the 6th of March 1804, and their assignment of one-third of the land on the 15th September 1810, to *Basil Banks,* with various receipts, appeared in the cause, and other proof was filed under a commission, including proof of the

complainant's title as a purchaser of *Allen Banks'* interest when the complainant amended his bill, in which it was alleged, that *Basil Banks,* pretended to have some interest in the land in controversy, which interest the complainant denied. Prayer that *Basil Banks* may answer the original and supplemental bill, and discover what interest, right or estate he claims in said lands, and the grounds, or title, on which the same is rested, &c.

*Basil Banks,* in his answer, adopted that of *Samuel.* A general replication was filed, and the Chancellor, (BLAND,) on the 6th December 1836, passed a decree for a sale. The trustees appointed by the court, reported a sale to *Samuel Banks* the defendant, for a part, and another part to *Reuben Warfield.* The cause was then referred to the auditor, who reported that he had applied the proceeds to the payment of commissions and costs; then to the satisfaction of the claim of *Samuel Banks,* one of the defendants, and the net balance divided equally between the three joint owners of the land; that *Samuel Banks* made a further claim, as for so much paid out of his own proper money, on account of the purchase of the land, and the auditor submitted to the Chancellor, whether such claim should be allowed; that if allowed, it would absorb the whole balance, and still leave him an unsatisfied creditor.

The complainant excepted to this report, because any allowance had been made to *Samuel Banks;* and the latter excepted to it, because he had not been allowed all his claim. The Chancellor confirmed the auditor's account, making *Banks* a partial allowance, and the complainant appealed to this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By T. S. ALEXANDER for the appellant, and
By ALEXANDER RANDALL for the appellees.

ARCHER J., at this term delivered the opinion of the court. The amended bill filed in this case, calls for a disclosure by *Basil Banks,* of the right, interest or estate, he claims in the

lands sought by the bill to be divided or sold, and the grounds or title on which his claim is rested. We consider the answer of *Basil Banks* as responsive to this enquiry in the bill, and as evidence in this cause. It refers to the answer of *Samuel Banks*, and adopts that answer. We have then a right to refer to both answers, for the purpose of obtaining the disclosure called for in the amended bill. He declares that he has been always equally and jointly interested with *Samuel* and *Allen Banks*, in the purchase of the lands mentioned in the bill. That he, *Samuel* and *Allen Banks* purchased the lands sought to be divided, of *J. T. Chase;* that at the time of the purchase, they were partners in trade; that the purchase was made for the sum of $4000, and to show the purchase, refers to the bond of conveyance, which is filed as an exhibit. He further says, that the said partners continued to work together as such, until the year 1812, and continued jointly to make payments on account of the purchase out of their joint funds, and by the sale of parts of the land. The title and ground of it, he discloses to be in the contract, which although in the name of *Samuel* and *Allen Banks*, is declared to be a purchase, in which all were interested; and that so much of the purchase money as was paid anterior to the year 1812, was paid by the concern, in which they were jointly interested; and by the sale of portions of the land. The facts abundantly prove, independent of the answer, that acts of ownership over the land were exercised by *Basil*, as well as the brothers, by the sale of rails: and it is established by proof, (which we must receive, not being excepted to under the act of Assembly,) that they were so far considered as jointly interested in the lands, that 238 acres of the original purchase, was considered as the part of the tract which *Basil Banks* was to have. It is further proved by several witnesses, that *Basil Banks* was to have one-third of the land when it was paid for. The payments which were made anterior to 1812, would seem to have been made, from the profits of the blacksmith shop, carried on by *Allen;* and although there is no direct evidence to show, that *Basil* had an interest in this concern, by the proof of witnesses, except that an

account against *Basil*, was allowed to be set off by an account of the firm against the witness, to whom *Basil* was indebted; yet the answer expressly declares, that payments were made from the concern of which *Basil* was a member; and it could have been made from no other concern than this, for the only business in which they were engaged, that yielded any profits, was the blacksmith business. The land by its cultivation produced none. Payments too were made by the sales of upwards of three hundred acres of land, which we are bound to believe was consented to by all, and especially by *Basil*, who allowed the part which he was to have, to be sold for payment of the purchase money. It was accordingly sold, and the money applied to the payment of the liability incurred by the bond of conveyance. We perceive nothing in the proof or the circumstances of the case, sufficient in our view to contradict the answer. We therefore think, that *Basil Banks* was entitled to his due proportion of the amount of sales, and that in this respect the Chancellor did not err.

It is urged against the decree, that *Samuel Banks* has been allowed the sum of $671, paid at different times by him, with interest thereon, from the dates of payment. The receipts exhibited, with the proceedings, and proved in the cause, evidence the payment of this sum by *Samuel Banks* individually; at least, they furnish a *prima facie* case of payment by him individually, and not by him in his partnership character. If the payment out of the partnership funds were insisted upon, the *onus* was thrown on the party so insisting, to adduce evidence of that fact, which is not furnished by the record; we must therefore, in this state of the proof, consider the payments as made by *Samuel Banks*, and not by *Samuel Banks* and *Allen Banks*, or by *Samuel*, *Allen* and *Basil Banks*.

The next question which has been raised is, that *Samuel Banks* was not entitled to be paid out of the proceeds of sale, for payments made by him, over and above his proper proportion of the purchase money; and it is said, that before he could have any pretensions to this claim, he must exhaust his legal remedies against *Allen Banks*. Without meaning to

intimate an opinion, how far a *vendor* could enforce his equitable lien against the *vendee*, without showing thnt he had exhausted his legal remedies, we must remark, that this case in our opinion, would stand on different principles. This is not the case of a vendor, going into equity against the vendee, to enforce his lien; but the complainant goes into equity to obtain a partition or sale, and if the latter, a distribution of the sale among the tenants in common, entitled thereto. He is seeking the aid of a court of equity, and should be coerced to do equity. It would be inequitable to allow him to take that proportion of the fund not procured by his means, but furnished with the means of the defendant, and which he was guilty of a violation of contract is not furnishing. It is said the claim here to a lien is in the nature of a vendor's lien; and that it must be claimed by subrogation to the rights of *J. T. Chase;* and that he could possess no other rights than those of the person to whom he was substituted. Admit this, and still the conclusion would not follow, which is attempted to be deduced from it. Suppose the complainant sought a conveyance of the legal title, as well as a division, and for this purpose had made *J. T. Chase,* or his heirs, parties, would the Chancellor have compelled *J. T. Chase* or his heirs, to have conveyed, until the purchase money was paid? certainly not. *Samuel Banks* therefore, taking the place of *J. T. Chase* or his heirs, cannot be in a worse situation than he, or they would be, and as they would be entitled to the money, so ought *Samuel Banks.* We conceive there is no error in the Chancellor's decree, and affirm the same with costs.    DECREE AFFIRMED.