DAVID SINDALL, AND JANE, HIS WIFE, *vs.* JAMES MASON CAMPBELL, THOMAS P. CONWAY, DORCAS SPARKS, AND CATHARINE CONWAY.—*December* 1848.

A father died in 1810, leaving a widow and three children. He was owner of freehold and leasehold property. The widow received the rents and profits, educated the children, and, in 1816, married again, settling her portion of the estate upon herself for life, with remainder to the three children. In 1821, she settled her final administration account, and passed the leasehold titles to the children. In 1824, one of the daughters married, and, with her husband, continued to live with the mother, as before. In 1831, all the parties interested united with one of the children, to sell a portion of his father's estate. He received the purchase money, and released his interest in the residue to his two sisters. The estate was worth about $200 per annum. In 1842, the married sister furnished an account, admitting, in 1839, '40, and '41, the payment to her of sums of money monthly, accompanied with a letter from her, stating, that "in 1839, it was agreed, I should receive a part of the rent out of my father's estate." In that account, she claimed a small balance, and offered to pay her proportion of taxes. HELD, upon a bill filed in 1842, for a partition and sale, that under such circumstances, the widow and mother, with the consent and acquiescence of the children, received and distributed the rents of the property up to 1839; that she was not intruder into, nor a voluntary trustee over the estate.

That in such case the land being sold, and account of rents taken, the allowance to the widow, in lieu of dower out of her husband's freehold estate, was not to be postponed to the claim of the children for rents and profits.

That the letter written by the married sister to her mother, in 1842, must be presumed to be written as the agent of her husband, and with his approbation and consent.

A memorandum filed in a cause, objecting to the competency of testimony, not signed by counsel, is not an exception within the act of 1832, ch. 302, sec. 5.

Where equity and law have concurrent jurisdiction over the same subject matter, the plea of limitations is equally available in both tribunals. In such case, equity follows the law.

Long acquiescence and lapse of time in obedience to the statute of limitations, is a bar to a bill for an account.

Sindall and wife, *vs.* Campbell, *et al.*—1848.

APPEAL from the Equity Side of *Baltimore* county court.

The bill in this cause was filed on the 31st August 1842, by the appellants against the appellees. It alleged, that *Thomas Conway* was seized in fee of a lot, describing it, died intestate about the 16th August 1810, leaving a widow, *Dorcas Conway*, (now *Sparks*,) and three children, *Jane*, *Thomas P.*, and *Catharine*; that *Thomas*, the father, had also certain leasehold property; that the appellee, *Dorcas*, administered on his estate, paid all his debts, and administration of his personal estate finally settled on the 26th July 1821, and the leasehold estate passed over to his distributees; that on the 8th June 1831, *Dorcas*, *Thomas P.*, the *appellants*, and *Catharine*, joined in a sale and deed of one of the lots, at the request of *Thomas P.*, who received the purchase money therefor to his own use, and afterwards, on the 13th April 1841, acknowledged a deed of release of all his interest and estate, as one of the heirs and distributees of his father, to *Jane Sindall* and *Catharine Conway*; that the said *Dorcas*, before her intermarriage with *Sparks*, conveyed all her estate to *J. F. Moranville*, on the 24th August 1816, in trust for her sole use, for life, with remainder, equally to be divided amongst the said *Thomas P.*, the *appellants*, and *Catharine*; that the trustee *M.* is since dead, without heirs; that the appellants and *Catharine*, are each seized in fee of one undivided half part of the lot held in fee simple, subject to the dower of the said *Dorcas* therein, and a like interest in the other lots, and also an estate in other lots, dependent on the life of the said *Dorcas*; that the said *Dorcas* and *Catharine* are, and ever have been, since the death of *Thomas Conway*, *in the receipt of the whole of the rents and profits of the said lots, and have refused to account* for the same; that the said property is not susceptible of an advantageous partition amongst those interested, and that it would be to the advantage of all parties interested therein, that the same should be sold for a division; that in this the appellees refuse to unite or join in any sale or partition. Prayer, for an account, sale, and distribution, &c.

After answers on the 1st May 1843, *Baltimore* county court decreed a sale for a partition by trustees.

The trustees reported a sale, which was finally ratified. *Dorcas Sparks* died, and *James Mason Campbell*, her *adm'r c. t. a.*, was made a party.

The cause was then referred to the auditor, the proof taken before him is sufficiently stated in the opinion of the judge of this court.

The auditor reported a statement of rents received by *Dorcas Sparks*, from 20th July 1821, and 8th June 1831, and from that time to September 1843.

And also an account between *J. Mason Campbell*, administrator of *Dorcas Sparks*, *debtor*, and *David Sindall and wife*, of the 25th May 1844, in which he allowed the appellants two-ninths of the rent, from 20th June 1821, to 8th June 1831, $582.08, and for one-third of the rents, from 8th June 1831, to September 1843, $927.44, and credited him with $26.70, amount allowed out of sale for dower interest of said *Dorcas.*

The auditor reported, he had made the foregoing account under instructions from the appellants, not being able in the present state of the cause to make up a full account, without undertaking to decide questions which properly belonged to the county court.

A sale made in June 1843, was also distributed by the auditor.

The defendant, *Campbell*, excepted to the account of 25th May 1844, because it allows to the complainants the dower interest of *Dorcas Sparks*, upon a pretence of their being creditors, which, if it were true, would not entitle them to more than a proportion of her estate, against which there are other unsatisfied claims now lodged with this exceptant, as her administrator. That the statement of rents is unsupported by evidence, is erroneous, both in assuming the receipt of a greater amount than was received, and in allowing no discounts, and also in going back to a period not warranted, either by the pleadings or proofs, for commencing to charge said receipts.

That it allows *Sindall and wife* a greater amount than is due them.

On the 30th May 1846, the auditor reported other accounts.

In one of which sales made by the trustees, to amount of $755, were distributed as follows:

Sindall and wife, *vs.* Campbell, *et al.*—1848.

1. Expenses,   -    -    -    -    -    -    $178 28

2. To *David Sindall and wife,* for
      one-half balance,   -    -    $288 36
      Deduct one-half rent received by
      them, and payable to *Catharine*
      *Conway,*   -    -    -    -    39 52    248 84

3. To *Catharine Conway,* -    -    288 36
      Add above rent received by *D. S.,*    39 52    327 88

                                  $755 00

In Account A :—
    Statement of rents received up to to September
      1843, as per statement 25th May 1844,   -    $5401 71

    *David Sindall and wife's* proportion, -    -    1509 52
    Amount of credits claimed, &c., -    -    -    439 58

    Amount due *D. S. and wife,*   -    -    -    $1069 94

Account B :—
    *David Sindall and wife's* proportion of rents
    for *three years next before filing the bill,* one-
      third of $880,   -    -    -    -    -    $293 33
    Do. from filing bill to September 1843, one-third
      of $880,   -    -    -    -    -    -    70 67

                                  364 00
    Deduct repairs and taxes, one-third of $68.58,    22 86

    Due *D. S. and wife,*     -    -    -    $341 14

Account C :—
    Amount due *D. S. and wife,* up to February
      1842, per letter 3rd March 1842,   -    -    $61 65
    Rents since received, one-third of $336.50, -    112 17

                                  173 42
    Deduct repairs, one-third of $68.58, -    -    22 86

    Balance due *Sindall and wife,* -    -    -    $150 56

The complainants excepted to accounts B and C; that account B excludes all rents which fell due and were collected by *Dorcas Sparks, more than three years before the filing of the bill.*

That account C, assumes a settlement and full payment between complainants and *Dorcas Sparks,* up to the date of the letter from *Jane Sindall* to the said *Dorcas Sparks,* offered in evidence by the defendants in this cause.

The defendants excepted to accounts A and B. That it allowed the rents for more than three years. That it does not allow taxes and other expenses on the property. That it does not allow for the education of *Jane Sindall.*

To account B, that it allows for three years against the settlement between the parties, and allows nothing for collections to *Mrs. Sparks'* estate, and he again excepts to allowance for dower interest of *Mrs. S.* to complainants, $28.

On the 9th June 1846, the county court, (LE GRAND, A. J.,) decreed, that the accounts between the estate of *Thomas Conway* and the trustees, of the 25th May 1844, and 30th May 1846, be ratified, except the allowance to *Mrs. Sparks,* dower interest to the complainants, the amount of which is decreed to the defendant, *J. M. Campbell,* as a part of her estate. That accounts A and B be overruled, and account C ratified, and defendant, *J. M. C.,* as administrator of *D. C.,* pay the same, with interest from 3rd December 1844

From this decree the complainants appealed.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By T. P. SCOTT for the appellants, and
By J. M. CAMPBELL for the appellee.

FRICK, J., delivered the opinion of this court.

The bill in this cause, was filed on the equity side of *Baltimore* county court, by *Sindall and wife,* the wife being one of the children and heirs at law of *Thomas Conway,* deceased, against *Dorcas Sparks,* the widow, and *Thomas* and *Catharine,* the other children of the deceased, for a partition and sale

of his real and leasehold estate, and an account and payment of rents. *Conway,* the intestate, died in 1810, and *Dorcas,* the widow, being the administratrix, settled her final account with the orphans court in 1821; "whereby she passed over the *title and right of possession to the* leasehold, (which was the larger portion of the estate of the deceased,) to the aforesaid distributees of said intestate." The widow, who, in the meantime, intermarried with *Sparks,* (about the year 1816,) previously made a deed of trust, by which she reserved to herself only a life estate in all her property, and gave it in remainder to her three children above mentioned. In 1831, all the parties, at the instance of *Thomas,* joined in a sale and deed of one portion of the property, who received the whole purchase money to his own use, and afterwards executed a deed of release of all his interest and estate, as one of the distributees of his said father, to his sisters *Jane* and *Catharine,* so that at the time of filing the bill, there were but two of the children of said *Conway* interested in the estate. In the course of the proceedings below, the widow died, and *James Campbell* became her administrator, and as such, was made a party in the cause.

On the 31st of August 1842, the daughter and her husband, who were married in 1824, filed their bill against the mother and sister, alleging their possession and receipt, through the whole preceding period, of the rents and profits, and claim, that the mother, who it now appears alone received the rents, is liable to account therefore in a court of equity, as trustee for said *Sindall and wife.*

Upon the answer, a decree for the sale of the property was passed and executed, but it is not necessary for the purposes of this opinion to particularize more than one of the sales, which was of fee simple property, made in the lifetime of the widow, *Dorcas Sparks.* An allowance was made her of one-tenth of the nett proceeds of said sale, in lieu of her dower, to which the complainants assert a right of preference under the equities claimed in the bill, against the said *Campbell,* her administrator.

The answer of the defendants denies, that they refused to complainants their proportion of the rents, although, from the nature of the case, they are unable to bring in any account, except for a few years back; and such account stated between the mother and the complainants, covering three years preceding the date of this proceeding, is accordingly filed. They also produce a letter and account, covering nearly the same period, from *Jane Sindall,* acknowledging the receipt of rents during that time, which the defendants rely upon as a settlement between the parties, and a concession of all claims antecedent to that date. And further, to all claims anterior to the date of that account in April 1839, the defendants rely upon the plea of limitations.

Upon the case presented, we do not feel authorised to regard *Dorcas Sparks,* the appellee, as an intruder, assuming, as a voluntary trustee, the control over the property, and the rents and profits, for which an account is claimed in the proceeding before us. It is impossible to examine the account furnished by *Jane Sindall,* the complainant, admitting, from April 1st, through the years 1839, 1840, 1841, the payment of sums of money monthly, coupled with the expressions in her letter, "it was agreed on, in April 1839, I should receive a part of the rent out of my father's estate," without concluding, that the subject matter to which the agreement refers, had not been left to slumber through the long period intervening from the death of her father, or the settlement of the estate before the orphans court. Whatever disposition was made of the previous rents received, by distribution to the parties, or appropriation by the mother, may fairly be presumed to have been acquiesced in by her. Not the slightest pretext of any preceding outstanding claim is there intimated. In the account rendered with the letter, she states the sum of $61.25 still due to her upon the account; and adds, "if you are willing to settle, send the tax bill and receipt of expenses, and I will pay my share; if you are not, let it stand to be settled with the other property." This letter bears date the 3rd of March 1842, and in the subsequent month of August, the present proceeding for a sale and distribution of the property was instituted. To this pro-

ceeding, as contemplated by the said *Sindall and wife*, this latter expression must be presumed to refer.

We may here, in support of our views, invoke the deed of trust executed by the mother in 1816, in contemplation of her second marriage, by which all her property, and her interest in the estate of their father, was secured to these children, to take effect after her death; and to the sale in June 1831, by all the parties, of a part of the father's estate, which *Thomas* took in full of his share, and afterwards executed to his two sisters a release of all his interest in the estate. Further we find from the testimony of *Catharine*, that *Jane*, the complainant, lived with her mother, from the period of her father's death, until 1832, although married to *Sindall* in 1824. The mother educated her. She received a good education. She was taught millinery; her mother paid for it. Her mother educated two of her children; one for about six months, and the other for about two years. Such is the testimony of *Catharine Conway;* and moreover, in speaking of her own position at the home of her mother, "she thinks $100 little enough per annum for the board, clothing and education she received."

Does not all this indicate the spirit of concession and amity, in which the widow and children of *Thomas Conway* then acted, in the adjustment of their respective interests in the estate of the deceased? From the accounts stated by the auditor, it would appear, that allowing for taxes and deficient collections, the whole annual amount of the estate was not much over $200; and from the testimony before referred to, we are informed they all lived together, even after *Jane's* marriage, up to the year 1832. That the mother was therefore in the enjoyment of the rents and profits, by mutual consent, for a common advantage, in which all shared, while, under the same roof, is certainly no forced construction of the relations under which they then lived.

And yet this court are required to raise the violent presumption, that the mother was all this time receiving these rents, against the consent of the parties, and, under such construction of misconduct, hold her liable to account as a stranger and intruder.

10    v.7

The case of *Strike and Macdonald*, 2 *H. & G.*, 191, and *Diffenderffer and Winder*, 3 *G. & J.*, 311, have been referred to, and relied on as supporting the complainants' pretensions. But in both those cases, the conduct of the parties was pronounced by the court grossly fraudulent and corrupt in the motive. The possession there being founded in fraud, a strict and rigid responsibility was of course enforced against them. It is true this court, in the case of *Drury vs. Conner*, 1 *H. & G.*, 220, adopt the broad doctrine, that "whoever enters upon the estate of an infant, is considered in equity as entering as guardian for such infants;" "and the infant may, by bill, after he comes of age, recover the rents and profits." But, in that case, it is to be observed, in the application of the doctrine, that the father died, having in his possession slaves belonging to his children. The administratrix took the negroes into possession, and *claimed and held them as her own.* The case of *Dormer vs. Fortescue*, 3 *Atk.*, 130, from which this doctrine of constructive trust is adopted, qualifies it thus: "that where there has been a mere adverse possession, without fraud or concealment, or where there has been any degree of laches on the part of plaintiff, the account shall only be taken from the filing of the bill." There is no allegation in the bill before us, that *Jane* was a minor; nothing in the testimony to shew, that she was not of age in 1821, when the final administration account was settled, or, in 1824, when she was married to *Sindall;* and supposing her infancy before that period, the claim which she and her husband now assert is of nearly twenty years' standing, since the marriage and through the whole time of their coverture.

We have therefore come to the conclusion, that the letter and account from *Jane Sindall,* is the evidence of a settlement at that date between the parties. We have not been unmindful, that in dealing with this document as a settlement, we must assume the concurrence of the husband. And, for the purpose of this decision, we have no difficulty in considering her the agent of *Sindall* in stating the account. It is impossible he should be ignorant of the material facts of his wife's rights, and her claim to share in the property, for the sale of which he is

complainant in the bill. She was in the receipt of money from her mother, monthly, through a period of three years. She acknowledges it by rendering an account, and requires the bills of taxes and repairs, to settle at once, or let them stand over to be settled, under the proposed bill for a sale and distribution. Can it be presumed, that all this was transacting between mother and daughter, without the knowledge of *Sindall?* To assume this, and that she wrote this letter without his privity, would justify the further presumption, that she might have filed the present bill in his name, and without his knowledge and privity—the one is as probable a presumption as the other—and the sister *Catharine,* who lived and was in constant intercourse with complainants throughout the whole period, testifies, that *Sindall* and his wife appeared to be perfectly satisfied, up to the date of the wife's letter to the mother, and never, up to that time, demanded any arrears of rent; but that *Sindall and wife,* both were willing that the mother should receive the rent and divide it. This, she says, took place about five years preceding, which would locate it within the year 1839, the period of the agreement adverted to in *Jane Sindall's* letter, and imply the full concurrence and acquiescence of *David Sindall,* the husband, in that agreement.

That prior to this agreement, some understanding or arrangement prevailed with regard to these rents, to which *Sindall* himself was privy, if not a party, is manifest from the statement in the bill, that in 1831, he, *Sindall,* and his wife, joined with the widow and other children in a sale of a portion of the property, the proceeds of which sale were allotted to *Thomas Conway;* and that *Thomas* afterwards, in 1841, (ten years having elapsed,) executed to *Jane,* the complainant, and *Catharine,* her sister, a release of all his interest, as one of the heirs and distributees of the father. It is further alleged, that when the mother settled the final administration account in the orphans court, "she passed over the title and right of possession of the leasehold estate to the distributees of said *Conway,* deceased;" so that *Jane,* the complainant, had the control of her portion, if she had chosen to assume it. Can it be supposed, that while they were thus parting with the property,

and executing assignments and releases between themselves, and *Sindall* himself a party, that nothing was said or agreed on with reference to the rents that had accrued? With these facts before us, it would be assuming too much to say, that the widow was wrongfully withholding and appropriating them, without the consent and concurrence of both *Sindall and wife,* the complainants in the cause.

In connection with this letter of *Jane Sindall,* it will be perceived, that the testimony of *Catharine Conway* is relied on in support of our views. It is stated upon the return of the commission, that this testimony is excepted to by complainants, and the memorandum to that effect is signed by the commissioner, but not by the solicitor for complainants. We are therefore not called upon to examine her admissibility, or look for the grounds of objection. By the act of 1832, ch. 302, sec. 5, it is provided, that no point relating to the competency of witnesses, or admissibility of evidence, shall be raised in the appellate court, unless it plainly appears by the record, that such point had been raised by exceptions filed in the cause in the court below. This memorandum is not signed by counsel, and is not such an exception as this court here can notice.

The view of the court, that there was between the parties, shortly before the filing of the bill, an adjustment of the claim for rents, disposes of the objection, that the plea of limitations, here asserted in behalf of the widow, cannot avail her in bar of a trust. In this view, the plea is out of the case; but, from the importance attached to it in the argument, and as a prominent point in the case, is entitled to the consideration of a few remarks from the court:

Viewed as a bill to account, if there could be an action at law for the same purpose, the statute would be a bar to a suit brought in equity. It is a settled principle, that chancery follows the law; and, acting in obedience to the statute, the plea of limitations is as available in equity as at law, in relation to the same subject. 2 *Gill & J.,* 311.

In all cases of concurrent jurisdiction at law and in equity, the statute is equally obligatory in both courts. 3 *Gill,* 146. 20*th Johns. R.,* 583, *Murray vs. Coster.* Here was a com-

plete concurrent remedy at law, and in such case the account will not be sustained in chancery, merely to save the bar of the statute. It was competent to the complainants, on the case made in their bill, to have recovered these rents from time to time, in an action of *indebitatus assumpsit*. And, if having the legal right, instead of resorting to his action for money had and received, the complainant files his bill, the same rule with regard to limitations applies in equity, that would conclude the action at law. Long acquiescence and a lapse of time, therefore, in obedience to the statute of limitations, is a bar to a bill for an account. *Acherly vs. Roe*, 5 *Vezey*, 565, *Perkins' note (6,)* and cases there cited. Thus where one had received the profits of an infant's estate, and after six years had elapsed from his coming of age, the infant brought a bill for account, the court held, that the statute of limitations was a bar to such suit, as it would be to an action at common law. *Daniel's Chancery Pleading and Practice*, 731, cited *Lockey vs. Lockey. Prac. in Chancery*, 518. And on this ground, if there remain any doubt of the settlement under the letter of March 3rd 1842, the court think the bar of the statute is conclusive against the complainants.

As regards the amount allowed by the auditor's account to *Dorcas Sparks*, in lieu of dower, the complainants' claim of preference has no foundation. No such priority exists under the rights and equities in their bill. This allowance, in lieu of her dower, made to the widow in her lifetime, devolved, when she died, upon her administrator. The case of *Warfield vs. Banks*, 11 *G. & J.*, 98, is not a parallel case. There one of several joint purchasers paid more than his share, and upon a bill filed for partition, upon sale and distribution of proceeds, he was decreed to be reimbursed his excess. This distribution was between the parties in privity. But here no such equity subsists. The money is part of the estate of *Mrs. Sparks;* and against the creditors of *Mrs. Sparks*, who are represented by *Mr. Campbell*, the administrator, no such lien or priority can be maintained. The complainants, as to what is due to them by the decree of the court below, can receive no more than the share properly arising to them of the assets of the

estate of said *Dorcas Sparks,* dividing the same rateably among the creditors, if insufficient to pay the whole, in due course of administration, the decree of *Baltimore* county court being affirmed.

DECREE AFFIRMED.