JOHN W. HENRY MILLER *v.* JACOB HOROWITZ
[No. 2, April Term, 1937.]

420

*Decided April 29th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hartwell M. King* and *Murray MacNabb,* for the appellant.

*Max Moshkevich,* for the appellee.

PARKE, J., delivered the opinion of the Court.

In the case of John W. Henry Miller, appellant, v. Adolph B. Hirschmann, to the use of Jacob Horowitz, appellees, which was decided by this court and was reported in 170 Md. 145, 183 A. 259, it was held that a purporting mortgage deed to Adolph B. Hirschmann of John W. Henry Miller's general legacy of a share in an estate of personalty, contingent on legatee surviving life tenant, is not a "chattel personal" within the statute authorizing decrees for sale of such chattels in Baltimore with the mortgagor's assent, and the purchaser, Jacob Horowitz, at sale under such a decree, acquired no title. (Code Pub. Local Laws 1930, art. 4, sec. 720.) It was further decided that the purporting mortgage was not obtained by fraud and was given to secure a valid indebtedness from its maker to the grantee; and that the terms of the purporting mortgage are sufficient to transfer unto Adolph B. Hirschmann, and his assignee, Jacob Horowitz, a defeasible title to all the interest of Miller in the estate of his dead father as a security for the indebtedness of Miller to Hirschmann and his assignee under the terms of the purporting mortgage, and that the document in question is operative as an assignment and may be made effective in equity to the extent of the indebtedness secured in the distribution of the share of John W. Henry Miller in the trust estate of Jacob H. Miller,

subject, however, to any paramount equities. In this manner, it was said, a court of equity protects and enforces in the appropriate proceedings the equitable rights and interests of all the parties concerned.

The appeal mentioned was taken in the foreclosure proceedings, and the result of the decision was to set aside the sale there made and to compel the assignee to rely upon the purporting mortgage as an assignment of the legatee's interest. The appeal now at bar comes from two rulings against John W. Henry Miller, the legatee, in an equity cause in which the trust created by the will of Jacob H. Miller was in course of administration. Upon the petition of the executors and the trustees named by the will, the chancery court assumed, on December 22nd, 1915, jurisdiction of the trust estate created by the testator. Since that time the trust has been administered under the supervision and control of chancery. The life tenant did not die until September, 1934, and the legatee survived her, and so the contingency has happened upon which he became entitled to receive his share. Jacob Horowitz claims that he is entitled, as the assignee of the purporting mortgage of the legatee to Adolph B. Hirschmann, to receive the legacy and, after the deduction of the indebtedness of the legatee to him as the assignee of Jacob Horowitz, to pay the residue of the legacy to the legatee. The legatee, however, maintains that he is entitled to his legacy without reduction, because the debt is, he argues, barred by limitations or is insufficiently proved for allowance in the account of the auditor. The chancellor rejected the contentions of the legatee by overruling the legatee's demurrer to the answer of the assignee, and sustaining the latter's motion to strike from the record the plea of limitations filed by the legatee after the ruling on the demurrer. The legatee has appealed from the two orders of the chancellor which make these adverse rulings.

After chancery had assumed jurisdiction and was engaged in the administration of the trust, and before the death of the life tenant, Hirschmann filed, on April

23rd, 1917, in the cause a petition in which he alleged that, as a holder of the purporting mortgage deed from John W. H. Miller, a *cestui que trust* in the cause, he was a proper party to the proceedings, and he prayed that the court pass an order making him such a party and grant him such other and further relief as his case might require. With this petition was a written agreement, over the signature of the legatee and his attorney, that the order be passed making the petitioner a party. On the same day, and because of this petition and the legatee's assent, the order was passed making the petitioner a party to the cause.

Since the legacy was contingent upon the legatee being alive at the death of the life tenant, the interest of the legatee was defeasible, and did not become absolute until he became the survivor on the death of the life tenant. When death occurred in September, 1934, it required the trust to be terminated by a distribution of the trust estate. In anticipation of this distribution, Jacob Horowitz filed, on October 27th, 1934, a petition which recited that he was the assignee of the purporting mortgage deed of Hirschmann, and had thereby become entitled to be made a party in his place and stead. With this petition was filed the original assignment, which was dated and acknowledged on November 4th, 1919. The court immediately passed an order making the petitioner a party to the proceedings. After this there were various petitions filed and orders passed in connection with the pending controversy. Some of these were countermanded or revoked, and their recital is not necessary. The proceedings which control are those beginning with the petition of the legatee filed on March 23rd, 1936. By this pleading the legatee sets forth that the petition of Hirschmann, which was filed on April 23rd, 1917, was not prepared in accordance with article 16, section 157, of the Code of Public General Laws because it was not accompanied by the mortgage as an exhibit; and, therefore, the order passed thereon making Hirschmann a party was not properly passed. Similarly, it is asserted

that the order making the assignee Horowitz a party was error, since the petition of Horowitz, while filing the written assignment to him, failed to file the purporting mortgage as an exhibit.

The petition further shows that an account of the auditor was filed on November 14th, 1934, in which was distributed a portion of the trust estate. The auditor distributed his one-seventh share to the legatee, subject to the operation of the purporting mortgage deed, whose legal effect and the amount due thereunder the auditor stated he was unable to determine from the papers filed, and so suggested that the sum payable to the legatee "be excepted from the final ratification and the sum retained by the trustees until the mortgagee files appropriate pleadings and proof of claim." A few days thereafter Jacob Horowitz, in the belief that the deed to him as the purchaser in the mortgage foreclosure sale had granted to him all the interest of the legatee, and that he was entitled to receive the whole thereof, filed a petition, with the deed as an exhibit, and obtained an order of November 16th, 1934, directing that the trustees pay to Horowitz as purchaser all sums of money which the legatee would have been entitled to receive under the provisions of the will of Jacob H. Miller, and also directing that the auditor so amend his report and account, subject to all proper objection. On November 22nd, the legatee excepted to the reservation made by the auditor on the account filed on November 14th, 1934, on the theory that there was no mortgage filed nor exhibit which would cause the trustees to withhold from the legatee any portion of the trust estate distributed under the audit. There were further proceedings which culminated in a stay until the validity of the foreclosure proceedings and the sale thereunder could be determined.

These proceedings resulted in a decree of the chancellor establishing the validity of the sale. An appeal was taken, but no bond was filed to stay the effect of the decree, and the chancellor in the cause at bar gave effect to the decree, confirming the title of Horowitz as pur-

chaser to the entire interest of the legatee, by passing, on October 14th, 1935, an order directing the auditor to amend his report and account so as to distribute the whole legacy in question to Jacob Horowitz and the trustees to pay out the money accordingly. As has been before stated, the decree in the foreclosure suit was reversed, and the title of the purchaser was declared void by the decision of this court in the case of John W. Henry Miller v. Adolph B. Hirschmann, to the use of Jacob Horowitz, *supra*.

On this statement of the facts, the petitioner and legatee prayed that the orders previously passed adversely affecting the petitioner be rescinded, and that he might have general relief. The chancellor passed an order directing an annulment of the orders of October 27th, 1934, November 16th, 1934, and October 14th, 1935, unless Horowitz show cause to the contrary.

The amended answer to this petition admits the formal allegations but denies those of substance. The answer, also, admits that the orders of the chancellor of November 16th, 1934, and of October 14th, 1935, which directed that the whole legacy of Miller should be distributed and paid to Horowitz, are in effect, but denied that the court had relied solely upon the deed to Horowitz in passing these orders. The respondent avers that he depends for the establishment of his claim against the legatee's interest upon the assignment by way of mortgage executed by the legatee to Hirschmann on March 31st, 1917, and by the latter subsequently assigned to Horowitz; and that this assignment is a security for the indebtedness of Miller to Hirschmann, which has been assigned to Horowitz, and is the basis of the respondent's claim, whose amount appears in the proceedings. With this answer a certified copy of the mortgage deed is filed as an exhibit, so that there is a complete chain of paper title shown by the record in Horowitz. It appears from this purporting mortgage, and is admitted by the demurrer, that on March 31st, 1917, J. W. Henry Miller, the appellant, was indebted unto Adolph B. Hirschmann in the sum of $700,

for which the debtor had executed and delivered to the creditor the former's twelve promissory notes of even date with the mortgage deed; and that the first eleven of these notes is for $20, with interest, payable respectively from one to eleven months after date, and the last or twelfth note is for the sum of $480, with interest, and payable twelve months after date. The purporting mortgage was declared to be given to secure the payment of these notes as they became due. All the interest of the debtor in his defeasible legacy under the will of his father was assigned to the creditor, "his heirs and assigns," and the said debtor or mortgagor expressly directed "the testamentary trustees in said will named, their survivors, survivor or successor to pay and deliver unto the said mortgagee all of said above named property without any further order, direction or assent from the said mortgagor."

It was to this answer that the legatee demurred. The court overruled the demurrer, and then the legatee filed a plea of limitations, which, on motion, was struck from the record.

1. One of the grounds relied on in support of the demurrer is the defense of limitations, which would be available under a general demurrer should it appear on the face of the answer that the bar applied, and no facts were stated sufficient to make the defense inapplicable. *Campbell v. Burnett,* 120 Md. 214, 226, 87 A. 894; *Belt v. Bowie,* 65 Md. 350, 355, 4 A. 295; *Biays v. Roberts,* 68 Md. 510, 511, 13 A. 366; *Meyer v. Saul,* 82 Md. 459, 462, 33 A. 539; *Gephart v. Taylor,* 124 Md. 111, 115, 91 A. 772. The legatee, therefore, must bring the assignment within the statute. The argument is made that the assignment is a specialty and bears date March 31st, 1917, and that, as the indebtedness on the promissory notes became due twelve months after this date, more than twelve years have passed since the maturity of every one of the twelve notes given, and, therefore, the enforcement of the assignment is barred by the provision of the statute that "No bill, testamentary, administration or other bond (except sheriffs' and constables' bonds), judgment, recog-

nizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after * * * the debt or thing in action is above twelve years' standing." The quoted portion of section 3 of article 57 of the Code embraces all of the statute which bears any relation to the present inquiry, and it does not appear that the assignment is within its purview.

The record is not of an action at law or a suit in equity to enforce the payment of all or any of the twelve promissory notes, which were given to evidence the indebtedness, and which do not appear to be writings obligatory. Nor is the record one of an attempt to recover on the covenant, in the assignment of the assignor, to pay the indebtedness to the assignee and his assigns. If such were the case, different conditions would arise than those of this record and other rules would control. If either the notes or the covenant were the cause of an action, the limitation of three years from the dates of the maturities of the notes or from the time of the last acknowledgment of the debt or promise to pay the debt would bar a recovery on any of the notes (a) ; and the limitation of twelve years from the date of the assignment would be a good defense on the covenant. *Earnshaw v. Stewart,* 64 Md. 513, 516, 2 A. 734; (a) Code, art. 57, sec. 1; *Young v. Mackall,* 3 Md. Ch. 398, 399; *Murdock v. Winter's Admr.,* 1 H. & G. 471.

It is true that the assignment is a specialty, but it is one of unusual features. A contingent legacy was assigned by way of security for a debt, with a direction to pay and deliver the legacy to the assignee if and when the assignor became entitled to it. The assignment provided that it became void if the debt were paid, and, if not, any residue remaining after the application of the proceeds of the legacy to the discharge of the debt was plainly intended to be paid to the assignor. So, the problem is not primarily in reference to a debt or thing

in action, but of the title and rights created in a transfer of interest in a contingent legacy of money by an assignment in the form of a chattel mortgage with the design to secure the payment of a debt.

Here the requisites concur for equitable cognizance, and equity will enforce the assignment as a valid transfer of title to the legacy upon an express trust which will continue until its uses are fulfilled. The legacy is contingent upon the survival by the prospective legatee of the life tenant; so, until the indebtedness is paid or tendered, the equitable lien and trust for the benefit of the assignee endure until the happening of the contingency upon which the legacy depends. As the contingency is uncertain and may occur long after the expiration of more years than would be within any term prescribed by the statute, and as the interest is defeasible, and there can be no immediate right of possession nor any debt or thing in action accruing to the legatee by reason of this defeasible legacy until the happening of the contingency, it is plain that the limitations of actions would not begin to run until the future event happened and the legacy became payable to the legatee or his assigns. *Bogart on Trusts,* sec. 950, p. 2756; *Jones on Collateral Securities* (3rd Ed.), secs. 582, 583; *Fidelity & Deposit Co. v. State,* 164 Md. 304, 315, 165 A. 176. See *Marshall v. Marshall,* 164 Md. 107, 163 A. 874; *Young v. Mackall,* 3 Md. Ch. 398, 407, 408; *Subers v. Hurlock,* 82 Md. 42, 45, 33 A. 409. Consequently, the trust and equitable lien here created in favor of the holder of the debt will continue, notwithstanding the present liability of the debtor and assignor on the promissory notes, and a covenant to pay the debt, may become barred by the statute of limitations. *Gibbs v. Cunningham,* 4 Md. Ch. 322, 324, 325; *Eastman v. Foster,* 8 Metc. (Mass.) 19; *Potter v. Kimball,* 186 Mass. 120, 71 N. E. 308; *Carpenter v. Cushman,* 105 Mass. 417; *Gisborn v. Charter Oak Life Ins. Co.,* 142 U. S. 326, 12 S. Ct. 277, 35 L. Ed. 1029; *Waln v. Hance's Admrs.,* 53 N. J. Eq. 660, 32 A. 169, 35 A. 1130; *Talbott v. Barber,* 11 Ind. App. 1, 38 N. E. 487; *Irwin v. Holbrook,* 26 Wash.

89, 66 P. 116; *Morton v. Harrison,* 111 Md. 536, 541, 75 A. 337; *Buck v. Lantz,* 49 Md. 439.

The statute of limitations operates only to bar the remedy and not to extinguish the right. So, although an action for the recovery of the debt may be barred by the statute of limitations, the right of the assignee under the assignment is not impaired, and the title may be held until the debt is paid and not merely until the debt is barred by limitations. *Jones on Collateral Securities* (3rd Ed.), sec. 582; *Jones on Mortgages* (7th Ed.), secs. 1203, 1204; *Jones on Chattel Mortgages* (Bowers), vol. 2, sec. 653; *Wood on Limitations* (4th Ed.), sec. 58, p. 275; *Campbell v. Burnett,* 120 Md. 214, 227, 87 A. 894; *Donaldson v. Raborg,* 26 Md. 312, 326-328; *Farmers' Bank v. Iglehart,* 6 Gill, 50, 57, 58; *Oliver v. Gray,* 1 H. & G. 204, 216; *Ohio Life Ins. Co. v. Winn,* 4 Md. Ch. 253, 262; *Lingan v. Henderson,* 1 Bland, 236, 282; *Brent v. Bank of Washington,* 10 Pet. 596, 9 L. Ed. 547; *Bank of Metropolis v. Guttschlick,* 14 Pet. 19, 32, 10 L. Ed. 335; *Lake v. Weaver* (N. J. Ch.), 70 A. 81; *Phelan v. Fitzpatrick,* 84 Wis. 240, 54 N. W. 614; *Conway v. Caswell,* 121 Ga. 254, 257, 48 S. E. 956; *Hurlbert v. Clark,* 128 N. Y. 295, 28 N. E. 638; *Townsend v. Tyndale,* 165 Mass. 293, 43 N. E. 107; *Hancock v. Franklin Ins. Co.,* 114 Mass. 155; *Higgins v. Scott,* 2 Barn. & Adol. 413, 109 Eng. Repr. 1196; *Spears v. Hartly,* 3 Esp. 81.

With the execution of the assignment and the notice given to the testamentary trustees of the assignee's rights by the filing of the petition of the assignee in the cause in equity in which the jurisdiction of chancery had been assumed and continues to be exercised, and the making of the assignee, with the assent of the assignor, a party to the cause by the chancellor, the equitable title under the assignment, subject to any paramount equities, was perfected by the trustee thereby becoming affected with notice of transfer, and the assignment became a lien on the interest of the assignor. *Perry on Trusts* (7th Ed.), secs. 438, 926; *Lambert v. Morgan,* 110 Md. 1, 72 A. 407; *Farmers' Bank v. Iglehart,* 6 Gill 50, 58; *Jones on Chattel*

*Mortgages* (Bowers), vol. 1, sec. 278; *Bacon v. Bonham,* 27 N. J. Eq. (12 C. E. Green) 209; *Woodward v. Laporte,* 70 Vt. 399, 41 A. 443; *Webster v. Industrial Acceptance Corporation,* 234 Ky. 613, 28 S. W. (2d) 959; and cases *supra.*

The chancellor had made the assignee and then the latter's assignee parties to the cause. The trustees were administering the trust created by the will under the jurisdiction and supervision of chancery, and the legatee and assignor was also a party either personally or through the trustees in their representative capacity. With reference to the legacy the legatee and these assignees were the *cestuis que trustent.* The testamentary trustees could not distribute the corpus of the trust in disregard of the relative rights of these *cestuis que trustent.* With all the parties in interest at bar, and the time of distribution having arrived, the trustees had the right to seek, and the chancellor the jurisdiction to give in these proceedings, a determination of the relative rights and obligations of the parties with respect to not only whether there was a subsisting and enforceable relation of trust between the assignee and the legatee but what were the relative rights of the assignor and the assignees to the legacy bequeathed to the assignor.

As is stated by *Perry on Trusts* (7th Ed.), sec. 926: "If the trustee has notice of an assignment by the *cestui que trust,* he cannot safely pay to the assignor either principal or interest, although the assignment is in the nature of a mortgage only; for notice to the trustee of the assignment is equivalent to taking possession by the assignee under a mortgage. Even if the deed is fraudulent and voidable, the trustee cannot pay the assignor until it is avoided." *Creswell v. Dewell,* 4 Gif. 460; *Leveridge v. Cooper,* 3 Russ. 58.

A trust may become barred by laches or such an unexplained lapse of time as would give rise to a presumption that the trust had been determined by the fulfillment of its purposes or by consent of the parties or by a decree of court. *Perry on Trusts* (7th Ed.), secs. 920, 922, 924-

926. Since there is no contention that the express and continuing trust created by the assignment was ever ended by consent or decree, the remaining question in this connection is whether the trust is ended under the doctrine of laches or that of following law by an adoption in equity of the period of limitations at law when analogous conditions exist in respect of a subject-matter over which law and equity have, as a general rule, concurrent jurisdiction. *Perry on Trusts* (7th Ed.), secs. 854-866.

It is true that equity, under certain circumstances, will deny equitable relief in the enforcement of a lien upon real or personal property, on the ground of laches or the presumption of payment arising from delay in the enforcement of the right by means of the lien. For instance, the enforcement of an equitable lien on land to secure the payment of a debt, whether under a mortgage or vendor's lien, is not barred in equity until, by analogy to the bar of twenty years against a right of entry, the lien is of more than twenty years' standing and a plea of limitations or lapse of time is invoked. If more than twenty years have elapsed since either the maturity of the debt secured by the lien and the last payment on account of the principal indebtedness or of the interest accruing due thereon or some other recognition by the debtor of the subsistence of the obligation, a presumption of satisfaction or discharge of the debt arises to bar relief in equity. *Balto. & O. R. Co. v. Trimble,* 51 Md. 99, 109-113; *Demuth v. Old Town Bank,* 85 Md. 315, 326-328, 37 A. 266; *Magruder v. Peter,* 11 G. & J. 217, 245, 246; *Subers v. Hurlock,* 82 Md. 42, 48, 49, 33 A. 409; *Peters v. Hignutt,* 138 Md. 24, 34, 113 A. 586; *Brown v. Hardcastle,* 63 Md. 484, 488, 489; *Wigmore on Evidence* (2nd Ed.), sec. 2517; Code, art. 57, sec. 10.

The purporting mortgage at bar is of personalty; and a mortgage of personalty does not afford sufficient basis for the period of twenty years to be adopted as the one from which a presumption of payment or discharge of the debt would arise under similar circumstances of possession of the mortgaged property and non-recognition

of the mortgage debt. There is no statute of limitations applicable to the foreclosure of a mortgage of personalty, nor to the assignment of personalty to secure a debt. See *London & Midland Bank v. Mitchell,* [1899] L. R. 2 Ch. 161. But a mortgage or assignment of personalty is a specialty, and the limitations at law bar an action on a specialty after the debt or thing is in action for more than twelve years. Equity will, generally, follow the law and by analogy will bar a suit in equity on the debt after twelve years from the time either of the last payment on account of the mortgage debt or interest, or of the last other acknowledgment of the continued existence of the debt. *Watkins v. Harwood,* 2 G. & J. 307, 308; *Sindall v. Campbell,* 7 Gill 66, 76. However, a distinction is to be taken between a suit on the note secured by the mortgage, and a proceeding against the thing mortgaged. *Supra, Ohio Life Ins. Co. v. Winn,* 4 Md. Ch. 253, 262. In the case of *Watkins v. Harwood, supra,* the subject-matter of the mortgage was corporeal or tangible personal property, which was by nature susceptible of delivery in present possession by the mortgagee upon the execution of the mortgage deed or of reduction to immediate possession by the mortgagee, if left by the terms of the mortgage in possession of the mortgagor, pending the maturity of the indebtedness and until default, and the right of possession arose on a default of the mortgagor. *Shorter v. Dail,* 122 Md. 101, 89 A. 329; *McGuire v. Benoit,* 33 Md. 181.

The slaves, horses, cattle, hogs, and tobacco which were the subject-matter of the chattel mortgage in *Watkins v. Harwood, supra,* were chattels susceptible of actual delivery. Although the debt intended to be secured had matured more than sixteen years before the death of the mortgagee, and the mortgagee on this default had then become entitled to sell the chattels, and time began to run on this default against the remedy of foreclosure because the default had entitled the mortgagee to the immediate possession of the mortgaged chattels and their sale by foreclosure, no foreclosure proceedings had been

instituted, nor was there any testimony in the record whether the mortgagor had delivered or the mortgagee had received the chattels bargained and sold by the chattel mortgage, nor whether the chattels yet were in being. It did appear, however, that during the period of sixteen years mentioned there was no recognition of the mortgage debt as a subsisting obligation. So, in equity it would be concluded on these facts that the security of the chattel mortgage had been abandoned because of the payment of the mortgage debt. In fact no pretense was made that there was anything in existence to sell, but the court was asked to set off the amount named in the mortgage deed as the debt of the mortgagor to the dead mortgagee against the distributive share of the mortgagor in the estate of the mortgagee.

It will be observed, in the case discussed, that not only had a cause of action accrued sixteen years previously, but the remedy of sale and of foreclosure had simultaneously arisen, with the right in the mortgagee of immediate possession in enjoyment of the corporeal personal property mortgaged. The subject-matter of the assignment or equitable mortgage in the present appeal is of a different nature. It was not susceptible of present possession nor delivery. Whatever interest to which the legatee might be entitled in the future, he had assigned and transferred that interest to his assignee, who, as between the assignor and himself, was a trustee to receive the legacy, if and when it became payable, and then in further trust to apply the funds to the discharge of the mortgage debt and to pay the residue to the assignor and legatee. On the default of the assignor in payment of the debt, the life tenant was alive, and it was only upon her death and the survival of the assignor that a present right to the legacy had accrued to the assignor and the right to receive the legacy in trust and give a discharge therefor had accrued to the assignee. It has been determined that the assignment or purporting mortgage had conferred upon the assignee no statutory power to sell the property mortgaged on

the assignor's default to pay the debt. *Miller v. Hirsch-mann,* 170 Md. 145, 183 A. 259; *Bryson v. Rayner,* 25 Md. 424. Nor would it have been equitable for chancery to have entertained proceedings for a sale. A defeasible legacy is not generally susceptible of a fair sale. It does not have any recognized or established value until the contingency upon which it depends has happened. So, the collection of the legacy rather than its disposition by sale before the assignor's right to the legacy became certain was not only reasonable but equitable, and preventive of injustice by a sale at a sacrifice. *Jones on Collateral Securities.* (3rd Ed.) secs. 589, 590, 606, 651-653, 655, 657; 49 *C. J.,* secs. 241, 243, pp. 994-996.

It thus appears that the assignee's continued holding of the title was in accordance with the assignor's rights as modified by the assignment and worked no inequitable change in the position of the assignor. *Bryson v. Rayner,* 25 Md. 424. The assignor, therefore, could maintain no suit against the assignee while the express and continuing trust created by the assignment continued. The period between the assignment and the legacy becoming payable was incident to the nature of the property assigned and its collection for the purpose of the trust. It thus appears that no presumption of payment will arise on the facts of this record from the lapse of time from the execution of the assignment. See *Wigmore on Evidence.* (2d Ed.) secs. 159, 2517. Since the retention of the title in the assignee was not adverse to the assignor, but was lawful, and there has been no default in proceeding in equity to sell, neither laches nor limitations bar the chancellor from affording relief to all the parties in interest in a distribution which will be in accordance with the rights created by the deed of assignment and now remaining to be enforced.

In addition to the reasons given, another consideration makes against a presumption of payment from the passage of time since the date of the assignment or purporting chattel mortgage. This consideration is that, before the legacy can be paid to the assignor by the testamentary

trustees, the title of the assignee to the legacy must be affirmatively established by the legatee to be at an end. The assignment expressly declares that it would be avoided by the payment of the debt intended to be secured. If this payment had been made or the debt and lien released or otherwise discharged, the inference is that the assignor would have had it so appear in the equity cause by proof, an appropriate entry or the filing of a release or order of satisfaction, as, if true, it was a necessity for the assignor so to do because the distribution and payment of the legacy could not be made to him until it so appeared. Consequently, no inference of the satisfaction or extinguishment of the debt arises on this record, which is devoid of any evidence of payment or discharge of the debt intended to be secured by the assignment that establishes an immediate right of possession of the legacy in the assignee if and when the legacy became due. *Perry on Trusts* (7th Ed.), secs. 926, 882; *Miller v. Hirschmann,* 170 Md. 145, 155, 183 A. 259.

2. The court finds no reason to sustain the demurrer on the other grounds assigned. The legatee cannot complain of the original assignee having been made a party to the cause, as that was done with the legatee's express written assent. Furthermore, the assignee was a proper party, as he held the legatee's assignment of his contingent legacy and so, later, did his assignee, who had acquired all the interest of the assignee by an assignment in writing. Nor is there any insufficiency in papers filed in support of the title of the assignees. The documents of title, whereby, under a purporting mortgage or assignment, the equitable title to the legacy was transferred to the assignee and, afterward to his assignee, are filed, and the amount and nature of the debt thereby appear, and fuller particulars would seem unnecessary. In fact, the demurrer admits the allegation of the amended answer that "the petitions filed by your Respondent has upon a number of occasions set out the indebtedness of the petitioner (legatee) to the respondent." The amount of the debt due or its payment in

whole or in part is a question of proof. And, finally, there was no error in striking from the record a plea of limitations, since the plea was but a repetition of the same defense, upon the same ground, set up by the demurrer to the amended answer.

Finding no error in the rulings, the two orders of October 22nd and December 18th, 1936, will be affirmed.

*Orders of October 22nd, 1936, and December 18th, 1936, affirmed, with costs to the appellee, and cause remanded.*