## ALICE A. CONSTABLE ET AL. *vs.* EMORY CAMP ET AL.

*Laches and Limitations—Creditors Bill Against Devisees and Lega-- tees—Payment of Decedent's Debts—Abatement of Legacies.*

In 1880 money was paid to an administratrix which, it was alleged, belonged to the estate of her deceased husband, in which she had then passed a final account. She retained the money without any accounting therefor to the next of kin of her husband and without any demand therefor from them until her death in 1894. Her executors, notified the administrator *d. b. n.* of the husband's estate and the counsel for his next of kin of their purpose to distribute the wife's estate. No claim was made and her personal property was distributed by an account passed in 1895. In the following year the next of kin of her husband filed a bill against the devisees of the wife's real property and the legatees of a small part of her personal property, asking for the payment to them of the money so collected by her in 1880. It was not made clear that this money was really due to the husband's estate, and the witnesses who knew most about the facts were dead. The money claimed by the plaintiffs was payable, if at all, out of the wife's personal estate, and owing to the plaintiffs' delay this estate had been distribued to her legatees. *Held*, that under these circumstances the plaintiffs were barred by laches from maintaining the bill.

When an executor collects money due to the estate which he has a right to collect and retains the same, his possession is in trust for the distributees and according to his title. In such case the Statute of Limitations does not begin to run in his favor and is not a bar to proceedings afterwards instituted by the distributees to recover such money.

The debts due by a testator must be fully discharged before legacies can be paid, and if the assets be insufficient, the general legacies abate before specific legacies can be made liable for debts. Nor can the real estate of a decedent be sold for the payment of debts until the personal estate has been exhausted. Therefore, a bill to enforce the payment of a debt cannot be maintained by a creditor against the devisees and legatees of a deceased debtor when the amount of the general legacies is sufficient to discharge the debt.

Appeal from a decree of the Circuit Court for Kent County (WICKES, J.)

The cause was argued before MCSHERRY, C. J., BRYAN, BRISCOE and BOYD, JJ. (Jan. 11, 1898).

*Albert Constable* and *Richard D. Hynson*, for the appellants.

*Hope H. Barroll*, for the appellees.

MCSHERRY, C. J., delivered the opinion of the Court.

In May, eighteen hundred and ninety-six, the appellees filed in the Circuit Court for Kent County a bill of complaint against the appellants. The appellees are the next of kin of one James Hurtt, who died intestate in the year eighteen hundred and seventy-six, and the appellants are devisees of the real estate and also some of the legatees of part of the personal estate of Amanda M. Hurtt, who was the widow of James Hurtt and who, herself, died in eighteen hundred and ninety-four. The bulk of the personal estate which Amanda M. Hurtt possessed at the time of her death was bequeathed in the form of pecuniary legacies to other persons than the parties to this suit. The bequest to Mrs. Constable consisted of personal property appraised at two thousand and sixty-seven dollars; whilst the bequests to her daughters Blanch and Harriet were specific—a diamond ring and breastpin and a piano respectively. The testatrix's real estate was devised to Mrs. Constable for life and then in remainder to her children; and she and her children are the appellants against whom the decree ap-

pealed from was passed. Upon the death of James Hurtt administration of his personal estate was duly committed by the Orphans' Court of Kent County to his widow, Amanda M. Hurtt. She gave bond, and in August, eighteen hundred and seventy-eight, stated and settled a first and final account, making a distribution of the small balance remaining in her hands as administratrix, after the payment of debts and expenses. After the death of Amanda M. Hurtt in eighteen hundred and ninety-four her will was admitted to probate and letters testamentary were granted to the executors therein named, and in September, eighteen hundred and ninety-five, these executors stated and settled their final account showing an overpayment to the estate. This overpayment was refunded to them by one of the devisees. The pecuniary and specific legacies bequeathed by her aggregated seven thousand five hundred and twenty-eight dollars and seventy cents. The overpayment was two thousand one hundred and seventy-eight dollars and twenty-nine cents, and there remained five thousand three hundred and fifty dollars and forty-one cents actually received by the legatees, of which sum five thousand and sixty-one dollars and seventy cents were paid to legatees who are not parties to this proceeding. It is alleged in the bill that after the final settlement and distribution had been made of James Hurtt's estate by Amanda M. Hurtt, administratrix, large sums of money were received by her which rightfully belonged to the estate of her deceased husband and which ought to have been distributed by her to his next of kin ; and it is insisted that *her* estate in the hands of the appellants is accountable to the appellees, her husband's next of kin, for these sums thus collected by her. And so, in effect, the prayer of the bill is that the devisees and some of the legatees of Amanda M. Hurtt may account to the next of kin of James Hurtt for all the money which she as his administratrix collected and failed to make distribution of, and that a distribution thereof may now be directed under the authority of the Circuit Court for Kent County sitting as a

Court of Equity. The defendants, who are the appellants, answered the bill denying the material averments and relying in addition on laches and limitations as further defences against the demand made upon them. Evidence was adduced on both sides and the Court below, after a hearing, signed a decree in July, eighteen hundred and ninety-seven, holding the appellants as devisees and legatees of Amanda M. Hurtt liable to account to the appellees as next of kin of James Hurtt, for the sums of money specified in the decree. From that decree this appeal was taken.

The sums of money for which the appellants are held accountable are two : *First*, the sum of eighteen hundred dollars, alleged to have been collected by Amanda M. Hurtt as administratrix of her husband's estate, on September the twentyfourth, eighteen hundred and seventy-nine, from James W. Hurtt ; and *secondly*, the sum of three thousand dollars, alleged to have been collected by her in the same capacity, on September the second, eighteen hundred and eighty, from the same James W. Hurtt. It is claimed that both of these sums were due to the estate of James Hurtt by James W. Hurtt on judgments originally recovered, the one in April, eighteen hundred and seventy-four, in the name of the State of Maryland to the use of Charles Woodland against James W. Hurtt, William Welch and James Willis, for sixteen hundred and eighteen dollars and nine cents and subsequently entered to the use of James Hurtt ; and the other in October, eighteen hundred and seventy-five, in the name of the State to the use of A. E. Woodland against James W. Hurtt and James Willis, for nineteen hundred and forty dollars and thirty-three cents, and subsequently entered to the use of James Hurtt for eighteen hundred and eightyfive dollars and twelve cents. That James W. Hurtt paid to Amanda M. Hurtt on September the twenty-fourth, eighteen hundred and seventy-nine, the sum of eighteen hundred dollars, and on September the second, eighteen hundred and eighty, the further sum of three thousand dollars, is clearly and conclusively established by the evidence ; but.

whether these payments were made in settlement of the two judgments just alluded to, and whether those judgments both belonged to the estate of James Hurtt are matters by no means free from dispute. The testimony of the debtor himself is to the effect that these judgments were satisfied and discharged by those payments, but there are other circumstances in the record which raise considerable doubt as to the accuracy of his statement. That James W. Hurtt was heavily indebted to Amanda M. Hurtt—that he owed her individually about ten thousand dollars on judgments— is specifically admitted by him in his testimony. Now the aggregate of the two payments exceed by several hundred dollars the gross amount due on the two judgments at the time the payments were made, and yet the receipts taken by James W. Hurtt both recite that the money was merely a *part* payment on the judgments of *Mrs.* A. M. Hurtt. Both receipts describe the judgments upon which these payments were to be partial satisfaction, to be judgments of *Mrs.* Hurtt, though both of these judgments stood on the records entered to the use of James Hurtt. Besides all this there is evidence in the record tending to show, and in our opinion actually showing that the judgment of October, eighteen hundred and seventy-five was improvidently entered to the use of James Hurtt, and that it should have been entered to the use of Amanda M. Hurtt as her money and not his was paid to A. E. Woodland, the owner of the judgment, as a consideration for its assignment.

However the truth may be as to the applicability of these payments to the satisfaction of these particular judgments we do not intend to rest the decision of this case upon that mere issue of fact; or, indeed, to discuss that feature of the contest at all. We have adverted to an outline of these conflicting circumstances merely because they will become important, or at least incidentally relevant, in considering the questions of law that are the controlling questions in the case. We regard it, however, as sufficiently established that the judgment of October the eighteenth, eighteen hun-

dred and seventy-five, in reality belonged to Amanda M. Hurtt though improvidently entered to the use of her husband.

If the money collected by Amanda M. Hurtt from James W. Hurtt was collected upon the two Woodland judgments, and if when collected it belonged not to her but constituted assets of her deceased husband's estate, would the appellants be liable in this proceeding to account therefor to the next of kin of James Hurtt, the intestate? If a liability ever did exist on the part of Mrs. Amanda M. Hurtt during her life it was a liability that, under the circumstances, obviously is not barred by the Statute of Limitations. Assuming that the money received by her belonged to her husband's estate, and that she collected it in her representative capacity after the settlement of her account as administratrix; then so long as it remained in her hands undistributed, it remained impressed with a trust in favor of the next of kin of her husband. Her holding of it under these conditions was a holding in trust for them— for ultimate distribution among them—and whilst the trust continued the Statute of Limitations did not begin to run. If the money belonged to her husband's estate, and if she collected it as his administratrix, the act of collecting it was not a devastavit—it was a rightful act done in the strict performance of her duty. Her possession of the fund thus rightfully received was the possession of the next of kin; and, as observed by LORD REDESDALE in *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 633 (relied on in *Raborg, &c.* v. *Donaldson, &c.*, 26 Md. 312). " If the only circumstance is that he (the trustee) does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title." The admitted or clearly proved possession and non-distribution of such funds creates a continuing trust, in which event the possession of the trustee does not operate as a bar, because such possession is all the while according to his title. *Donaldson* v. *Raborg, &c.*, 28 Md. 57. It is manifest, then, that so long as this

fund remained in the hands of Mrs. Hurtt undistributed her possession of it, if it belonged to her deceased husband's estate, was according to her title, and, therefore, could not have been adverse thereto ; and this being so the Statute of Limitations never began to run in her favor and could not have been invoked by her as a bar to proceedings instituted by her husband's next of kin against her in her represent-ative capacity.

But although the Statute of Limitations be inapplicable, the defence of laches is undoubtedly available.   Whenever there is such neglect or omission to assert a right as taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to an adverse party, the defence of laches becomes a bar.   The length of the delay and the nature of the acts done during the interval are the two circumstances that constitute the bar.   Where, as said by LORD ROMILLY, Master of the Rolls, in *Wollas-ton* v. *Tribe*, L. R. 9 Eq. 50, there has been any dealing "which had altered the state of matter," or where the acts done during the interval injuriously affect either party and cause, as respects the remedy invoked, an injustice in pursuing one course rather than the opposite, Courts of Equity will refuse to lend their aid to the enforcement of a demand resulting in injurious consequences directly refer-able to such changed conditions and such delay.   Very often in the administration of justice the hour-glass must supply the ravages of the scythe, as in many instances the lapse of time, though not of great duration, carries with it the life and the memory of witnesses, the muniments of evidence and the other means of judicial proof, and brings about, by intervening changes, material alterations in the relative situation of the interested parties.

The money claimed to have been paid in eighteen hun-dred and seventy-nine and eighteen hundred and eighty in settlement of the Woodland judgments was paid to Mr. Charles A. Baker, the attorney of Mrs. Amanda M. Hurtt ; and he died some years ago ; Mrs. Hurtt, who received the

money, is also dead.   No demand was made upon her dur-
ing her life and her estate was finally settled in the Orphans'
Court of Kent County on September the seventeenth, eigh-
teen hundred and ninety-five.   Long before the final dis-
tribution of her personal estate these appellees were fully
apprised of all the facts upon which they now rely in this
proceeding.   Indeed, there is sufficient in the record to in-
dicate that there had been some prior litigation over the
same claim in a Court of Law, though the precise nature of
that litigation does not appear.   But on July the fifth, eigh-
teen hundred and ninety-five, Mr. Barroll, who seems to
have been administrator *de bonis non* of James Hurtt as
well as the counsel for the appellees, was notified in writing
by the executors of Amanda M. Hurtt that they would
proceed to settle her estate after the expiration of the then
pending term of the Circuit Court for Kent County ; and
in the letter written by them to him on that date they
stated : " The executors have given you ample time to
bring up any suit your clients (heirs of James Hurtt) may
have desired." No claims of the next of kin of James
Hurtt or of his administrator *de bonis non* against the estate
of Amanda M. Hurtt for the sums of money now sought
to be recovered were presented or preferred ; and in some-
thing over two months after the delivery of the notifica-
tion just alluded to the executors finally closed Mrs.
Hurtt's estate and paid out to legatees who are not parties
to this proceeding over five thousand dollars in money.   If
the decree appealed from stands the devisees of the real estate
will be required to pay to the next of kin of James Hurtt
a sum of money which if payable by the estate of Mrs.
Hurtt at all was properly payable out of her personal estate,
and was only not so paid therefrom because of the neglect
of those who claim it to present their demand before the
debtor's personal estate was settled and distributed, though
they were fully apprised of all the facts at that time that
they now rely on.   The situation of the parties called on
for payment has been materially changed from that which

they would have occupied had the claim been proved against the personal estate of Mrs. Hurtt.   The personal estate that was the primary fund for the payment of debts has been distributed to other legatees who have received their legacies because of the failure of the appellees to file their claim in due time and after being notified to do so; and an attempt is now made to hold the real estate liable, though had the appellees exerted a proper diligence in asserting their claim that real estate would have been wholly exonerated from liability.   If the decree should be enforced the result will be that the devisees will pay the debts due by the testatrix though she had ample personal estate out of which complete satisfaction could have been had; and the burden will be thrown on the real estate, not because it was primarily liable, but simply because the creditor failed, though fully informed of all his rights, to file his claim before distribution and payment of the legacies were actually made.   When the results of the delay by the appellees are so unjust to the devisees, and when, as a consequence of that delay, such material changes have been brought about in the situation of the parties, and especially when the two witnesses—Mr. Baker and Mrs. Hurtt—who could have testified as to whether the sums now sought to be recovered were really paid on the Woodland judgment are both dead, a Court of Equity ought to rigidly apply the defence of laches.   It was aptly observed in *Zollikoffer* v. *Seth,* 44 Md. 375 : " If, however, a party has a provable claim against an estate and without sufficient cause, neglects to prove and exhibit it to the executor in due time, it may be that in any subsequent attempt to pursue the assets in the hands of legatees or distributees, he will be successfully met with the defence of laches."   And if this be true as respects legatees it is at least equally so in regard to devisees.   *Van Bibber* v. *Reese,* 71 Md. 614.

But there is another ground upon which the decree below must be reversed.   It is an elementary doctrine that the personal estate of a deceased debtor is the primary fund for

the payment of debts.   Unless the personalty is insufficient a Court of Equity has no jurisdiction to decree a sale of a decedent's real estate for the payment of his debts; and even then the amount payable out of the realty is only the sum that the personalty falls short of satisfying.   It is equally true that the debts must be first fully discharged before the legacies can be paid.   If there be a deficiency of assets a specific legacy will not abate with the general legacies—the latter must be first entirely exhausted before the former can be made liable for the decedent's debts. Now, the bill in this case was filed against the devisees of the real estate.   Of these devisees Mrs. Constable was bequeathed, in addition to the devise to her, a general legacy, and her two daughters were given the specific legacies we have already mentioned.   Mrs. Constable's general legacy was entirely absorbed in making good to the executors an over-payment to which we have adverted. She consequently took nothing as legatee.   The result is that the property affected by the decree is the real estate and the specific legacies.   This is precisely the reverse of what ought to have been done if there was any liability existing at all.   The total amount of the two Woodland judgments with accrued interest was something more than the value of Mrs. Hurtt's personal estate.   But the evidence shows, as we have already observed, that one of the Woodland judgments belonged to Mrs. Hurtt and not to her husband.   The amount due on the other, together with all interest and costs, was considerably less than the five thousand dollars paid out in pecuniary legacies, and if any liability existed against Mrs. Hurtt's estate to pay the amount of that judgment to her husband's next of kin, her personal estate was amply sufficient to have discharged it, and the legatees ought to have been proceeded against, as the legacies in their hands were liable before the devisees or the specific legatees could be called on.   This has not been done.   The decree subverts the legal principle just stated and holds the devi-

sees and the specific legatees liable to the exoneration of the pecuniary legatees altogether.

It follows from the views we have expressed that the decree appealed against must be reversed, and as the defence of laches is a complete bar to the right of the appellees to recover, the record will not be remanded.

> *Decree reversed with costs above and*
> *below and bill dismissed.*

(Decided February 10th, 1898).