[No. 3905.  Decided September 11, 1901.]

W. D. IRWIN, *Appellant,* v. GREENVILLE HOLBROOK, *Respondent.*

TRUSTS—CONVEYANCE OF REAL ESTATE TO TRUSTEE IN ORDER TO DISCHARGE DEBTS—CONTINUANCE OF TRUST RELATION.

Where a conveyance of real estate was made to a person with authority to sell it, pay certain debts of the grantor, and account

to him for the excess, the relation of trustee and *cestui que trust* was thereby established, which was not discharged by the sale of the property and the payment of the debts by the grantee so as to alter the relation of the parties to that of debtor and creditor, but the trust attached to the money realized and the grantee's duty to account became continuous.

SAME—LIMITATIONS—ACCRUAL OF ACTION—KNOWLEDGE OF FRAUD.

An action against a trustee for relief on the ground of fraud is proof against demurrer setting up the bar of the statute of limitations, when the complaint contains a direct statement of the time of the discovery of the fraud within the statutory period for action thereon, without negativing the idea that it might have been sooner discovered.

Appeal from Superior Court, Whitman County.—HON. WILLIAM McDONALD, Judge. Reversed.

*A. A. Wilson* and *Thomas Neill,* for appellant.

*Trimble & Pattison,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—The material facts alleged in the amended complaint in this cause are that on the 21st day of February, 1885, and for some time prior thereto, the appellant was the owner of certain real estate in Whitman county, which was then covered by a mortgage to one Plimpton to secure a note for $300, with accrued interest. At the same time the appellant was indebted to the First National Bank of Colfax on a promissory note for $750 and accrued interest. At the time of the execution of the last named note respondent signed it as surety for appellant. It is alleged that on the date first above mentioned appellant and respondent entered into a contract by which appellant agreed to convey to the respondent the said lands in trust; that respondent would take possession thereof, sell the same in such manner as to derive the greatest consideration obtainable therefor, and out of the proceeds

would pay the note to the First National Bank of Colfax thereafter to become due, and also the amount of the mortgage then on the said lands, and held by said Plimpton; that respondent was to account to appellant for all sales so made and was to turn over to appellant any surplus of money remaining in repondent's hands after the payment in full of the indebtedness above mentioned; that, acting in pursuance of said agreement, appellant did, on the date first mentioned, convey to the respondent, by warranty deed, the said real estate, and respondent thereupon took possession thereof; that on or about the 13th day of October, 1890, the respondent, with intent to defraud appellant, and to conceal from him the true condition of said trust property, and the amount received by respondent from the sale thereof, falsely represented and stated to appellant that he had sold all the land conveyed by appellant to him as aforesaid, and had paid the indebtedness to be paid by him from the proceeds of such sales, but that such proceeds were not sufficient to fully pay the same, and that respondent had used his own funds to the amount of $500 over and above the amount he had received from such sales; that respondent represented that appellant owed him the sum of $500 by reason of such advancement of his own funds, and requested appellant to give him his note for said sum of $500; all of which respondent then well knew to be false and untrue; that appellant, placing trust and confidence in respondent, and relying upon his said statements and representations, and believing them to be true, did, on said 13th day of October, 1890, give to respondent his note for $500, due two years after date, with interest at the rate of ten per cent. per annum, in settlement of the amount that appellant believed from respondent's said statement that he owed respondent on ac-

count of the payment of said notes over and above the amount realized from the sale of said lands; that appellant had no reason to doubt the truthfulness of respondent's said statements and representations until on or about the 1st day of August, 1897, when, in conversation with respondent, he stated to the appellant that since the time appellant gave him said note respondent had received from the sale of part of said lands the further sum of $450, which amount he had credited upon appellant's note; that said statement aroused in appellant's mind a suspicion that respondent had concealed from him the truth, and had made false statements and representations to him in regard to said property and the amount received by him from the sale thereof; that thereupon appellant examined the records of Whitman county to ascertain if respondent had sold all of said lands, the parties to whom sold and the amounts received by him. The complaint then sets forth in detail the sales made, and the amounts received therefor, as disclosed by the records, aggregating more than $5,000. It is next alleged that on or about June 1, 1898, appellant demanded from respondent an accounting, and the payment to him of the amount received by respondent over and above the amounts paid out by him on said notes; that respondent has ignored said demand, and has failed to make such accounting, or pay to appellant any sum, except that he credited upon said note of $500 the said sum of $450, admitted by him to have been received since the date of making said note, and has offered to surrender to appellant said note in full settlement on account of the sale of said lands; that respondent has not accounted to appellant for the amount of moneys received, and appellant is unable to state the exact sum that would be due to him upon a full and complete settlement and accounting, but believes, and therefore alleges the fact to be, that

there is due plaintiff the sum of $5,983.60. The complaint
concludes with the prayer that respondent be required to
account for all moneys received by him from sales of the
lands conveyed to him in trust by appellant, and also as to
what sums respondent paid upon the promissory notes due
from appellant; that, if respondent fails to make such ac-
counting, appellant shall recover from him the sum al-
leged to be due as above mentioned. To the amended com-
plaint respondent demurred upon the following grounds:
(1) That several causes of action have been improperly
united; (2) that the complaint does not state facts suffi-
cient to constitute a cause of action; (3) that the action
has not been commenced within the time limited by law;
(4) that the court has no jurisdiction of the person of
the defendant or of the subject matter of the action. The
demurrer was, by the court, sustained, and the appellant
elected to stand upon his complaint, and refused to plead
further. Thereupon judgment was entered that the cause
be dismissed, and that appellant take nothing by this ac-
tion. The cause is now before this court on appeal from
said judgment.

It is assigned as error that the court sustained the de-
murrer to both the original and the amended complaint,
but we will confine our discussion to the amended com-
plaint. This is an action to compel an accounting between
a trustee and his *cestui que trust*. The complaint alleges
a contract which created a fiduciary relation between the
parties and expressly cast upon respondent the duties and
obligations of a trustee to account for the proceeds of sales
of the real estate conveyed to him. We understand the
demurrer was sustained by the court below on the theory
that the action is barred by the statute of limitations. Re-
spondent's position is that, if this is an action for an ac-
counting, then, under the agreement between the parties,

when respondent sold the land, if there was any surplus after the debts were paid, the relation of debtor and creditor was established and the statute of limitations commenced to run from that time. In support of this position respondent cites *Duclos v. Walton,* 21 Ore. 323 (28 Pac. 1.) In that case a mortgage existed upon the land, and the mortgagor conveyed it to the mortgagee in liquidation of the debt for the purpose of avoiding the expense of foreclosure proceedings. The conveyance, says the opinion, was absolutely made. The opinion also states that:

"The evidence of both parties indicates that the deed was given and received to liquidate the debt, but as the defendant proposed to sell the property, not wishing to keep it, but to secure his money, he agreed if he could sell it for more than his debt and expense, that he would be responsible for the surplus to the plaintiff, and as evidence of his promise gave the plaintiff the writing to that effect."

The action seems to have been brought upon the theory that the transaction was a mortgage, and carried with it a power of sale. The court held otherwise, and to the effect that the writing was given by the defendant of his own accord; that he was not a trustee, but his liability was confined entirely to the written promise, which he had voluntarily given; and the remedy was, therefore, by action at law. In the case at bar the conveyance was not made absolutely to pay the debts. Their payment was a mere incident to the purposes contemplated by the conveyance, and there was no mere voluntary promise on the part of respondent. But the whole transaction, as alleged, was that of merely turning over the real estate to the respondent with authority to sell it, and he was then instructed by appellant to pay the debts, and account to him for the excess. We think he was clearly a trustee, and that the relationship between the parties differed material-

ly from that which existed in *Duclos v. Walton, supra.* The relationship of trustee and *cestui que trust* did not, therefore, cease when the land was sold and the money received by respondent. The trust attached to the money, and respondent's duty to account became continuous.

In *Re Sanderson,* 74 Cal. 199 (15 Pac. 753), which involved the liability of an executor, it is said at pages 215 and 216:

"His obligation to account was continuous and he cannot claim that his failure to do so at any moment of time set the statute in motion, or cast upon the respondents the duty to demand an accounting; since their right to demand it ran with his duty, and could be asserted so long as his duty remained unperformed. . . . He did not and could not 'repudiate his trust' entirely by his mere failure to account. He failed to perform a specific duty which still continued imposed upon him until his accounts were settled."

In *Constable v. Camp,* 87 Md. 173, 178 (39 Atl. 807), it is said:

"It is manifest, then, that so long as this fund remained · in the hands of Mrs. Hurtt undistributed her possession of it, if it belonged to her deceased husband's estate, was according to her title, and, therefore, could not have been adverse thereto; and this being so, the statute of limitations never began to run in her favor and could not have been invoked by her as a bar to proceedings instituted by her husband's next of kin against her in her representative capacity."

In *Davis v. Eastman,* 63 Vt. 651, 654 (30 Atl. 1), it is said:

"A period of limitation will not commence to run in favor of trustees of this character until the trust relation is terminated or repudiated. . . . The settlement of an estate on what purports to be a final account is not necessarily a termination of the trust. If assets remain

in the hands of the accountant undisclosed he continues to hold them in his fiduciary capacity. It cannot be said that this executrix ever repudiated the trust relation. She fraudulently kept from the heirs the knowledge which might have given to her conduct the effect of a repudiation. They cannot be charged with knowledge that she claimed the estate remaining in her hands, for they did not know that there was any such estate."

In the case now before this court it is alleged that respondent fraudulently concealed from appellant knowledge of the fact that other moneys remained in his hands. If the truth had been disclosed by him at any time, then his intention to withhold the remaining funds would have been apparent. His repudiation of the trust would thereby have been brought home to the appellant, and the statute would doubtless then have commenced to run. The complaint alleges, however, that knowledge of such fraudulent concealment did not come to appellant until August, 1897. Should the complaint allege facts amounting to diligence on appellant's part in his efforts to sooner discover the fraud? This question was fully discussed by this court in *Stearns v. Hochbrunn,* 24 Wash. 206 (64 Pac. 165). It is there held that a complaint in an action for relief on the ground of fraud, containing a direct statement of the time of the discovery of the fraud, without negativing the idea that it might have been sooner discovered, is sufficient to bring the case within the saving clause of the statute of limitations, which provides that the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. The statute referred to as found in Bal. Code, § 4800, subd. 4, is as follows:

"An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have ac-

crued until the discovery by the aggrieved party of the facts constituting the fraud."

The court, in its opinion in the above case, says:

"While it is true that the foundation principle of courts of equity in granting relief on the ground of fraud was that the party defrauded was not affected by the lapse of time so long as he remained in ignorance of the fraud that had been committed, yet equity aided the diligent, and not the negligent, and the conduct of the party defrauded in determining his right to relief, was as important as the conduct of the party perpetrating the fraud. The courts, therefore, held that the plaintiff, in order to put a defendant on his defense, must negative the presumption of negligence which arose from the mere lapse of time. In accordance with this principle, and the principle that means of discovery is actual discovery, the earliest English statute relating to relief on the ground of fraud applicable to suits in equity (that of 3 and 4 Wm. IV.) enacted that 'the cause of action is deemed to have accrued at, and not before, the time at which such fraud shall, *or with reasonable diligence might have been,* first known or discovered.' By our Code all forms of pleading are abolished. The complaint is sufficient when it contains a plain and concise statement of the facts constituting the cause of action; and the rules by which the sufficiency of a pleading is to be determined are those prescribed therein. The statute, too, it will be noticed, omits the italicized portion of the English statute above quoted. It would seem from this that the statute intended that a complaint should be deemed sufficient when it contained a direct and positive statement of the time of the discovery of the fraud, without further negativing the idea that the fraud might have been discovered sooner; leaving it rather a rule of evidence than a rule of pleading, if it still be the rule that means of discovery is equivalent to actual discovery."

We think the above case must be decisive of this one, as the allegations of the complaint in this case come clearly within the rule there announced. The action was com-

menced about one year after the alleged discovery of the fraud. The judgment is therefore reversed, and the cause remanded, with instructions to the lower court to overrule the demurrer, with costs taxed in favor of appellant.

REAVIS, C. J., and DUNBAR, ANDERS, MOUNT and WHITE, JJ., concur.

FULLERTON, J., not sitting.